THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DARYL HOWARD, | ) | |
| | ) | |
| *Plaintiff/Counter-Defendant*, | ) | No. 22 C 4874 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| DOLLAR TREE STORES, INC., | ) | |
| | ) | |
| *Defendant/Counter-Plaintiff*. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Daryl Howard brought this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, to recover unpaid overtime compensation and liquidated damages from Defendant Dollar Tree Stores ("Dollar Tree"). Dollar Tree countersued, bringing claims of fraud, breach of contract, and unjust enrichment. Both parties now move for summary judgment. For the following reasons, both Dollar Tree's motion [76] and Howard's motion for summary judgment [81] are denied.

## BACKGROUND

### I. Failure to Comply with Local Rules for Summary Judgement

At the outset, the Court must address the parties' sub-par briefing in this case. At summary judgment, the "party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56. Alternatively, the party may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id*. Here, Howard's statements of fact and responses include myriad citations to evidence that does not clearly and directly support his asserted facts. Indeed, many of his citations do not support the

1

asserted fact at all. Rather than pointing this out, Dollar Tree simply denies Howard's asserted facts, often without evidentiary support or explanation. The Court will not root through the hundreds of documents and thousands of pages that make up the record here to make a case for either party. "Judges are not like pigs, hunting for truffles buried in [the record]." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Consequently, in reviewing the parties' motions, this Court strictly enforces all procedural rules and requirements. Accordingly, the Court strikes each of Howard's statements of fact, and every factual assertion in Dollar Tree's statement of fact that lacks direct citation to easily identifiable support in the record. *See McDaniel v. Syed*, 2024 WL 4197357, at *3 (7th Cir. Sept. 16, 2024) (district courts "may require strict compliance with their local rules," and enforcing such rules in the event of non-compliance is not an abuse of discretion); *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 528 (7th Cir. 2020) (same); *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809–10 (7th Cir. 2005) ("A district court does not abuse its discretion when, in imposing a penalty for a litigant's non-compliance with Local Rule 56.1, the court chooses to ignore and not consider the additional facts that a litigant has proposed.").

## II. Factual Background

### A. Howard and Dollar Tree

Dollar Tree first contracted with Bill Kazupski in 1989 to facilitate the provision of security services at various Dollar Tree stores. (Dkt. 78 ¶ 2). Around 2008, Dollar Tree, through Kazupski, contracted with Howard to provide such security services on a seasonal basis. (*Id.* ¶ 11). Four years later, in 2012, Howard transitioned to a full-time role. (*Id.* ¶ 11; Dkt. 81-1 ¶ 73). Throughout his tenure at Dollar Tree, Howard identified as an auxiliary police officer and thus held himself out as a law enforcement officer, despite never working for any government-sponsored law enforcement agency. (Dkt. 78 ¶ 12; Dkt. 108 ¶¶ 2, 11; Dkt. 81-4 at 173:1–20).

Dollar Tree did not have any training for its security guards. (Dkt. 78 ¶ 63). Instead, it communicated expectations and instructions directly to Kazupski; these instructions were delivered in multiple formats, including emails and Post Orders. (Dkt. 78 ¶ 4). In a May 2014 Post Order, Dollar Tree articulated its expectation that security guards actively monitor the store to which they were assigned, the surrounding sidewalks, and parking lot for unwanted activity such as loitering, panhandling, and drug dealing. (*Id.*). If such activity was detected, guards were expected to notify store management and, if needed, contact the police. (*Id.*). The Post Order also made clear that security guards' presence "should be utilized to deter shoplifting, but shoplifting apprehension [was] NOT the focus of the guard." (*Id.*). The record does clearly establish whether Kazupski or Store managers were responsible for communicating Dollar Tree's expectations to the security guards, nor does the record establish how often Dollar Tree disseminated its written directives.

During Howard's tenure as a security guard, Kazupski would occasionally ask Howard to find fill-ins to cover unstaffed shifts. (Dkt. 78-7 at 2; Dkt. 114-8 at 227:15–228:11). Kazupski, in an email to security guards Reggie McCann, Roy Ocasio, and Howard, explained that he could still pay the guards for the hours they were assigned to the store, even if they used a fill in, but he needed to know exactly who worked the shift. (Dkt. 78-7 at 2 (Kazupski writes, "I am being informed that the officers scheduled are also sending in people other than themselves to work a shift. Personally as long as a shift is covered, it is fine with me.").

To facilitate payments to the security guards, Dollar Tree required security guards to fill out various forms, including an ACH deposit authorization form. (Dkt. 132 ¶ 18). Rather than process the necessary paperwork, Kazupski would sometimes ask Howard to accept pay owed to a fill-in on his check, thereby making Howard responsible for compensating the fill-in. (Dkt. 114-

3

8 at 227:15–228:11). Howard regularly used fill-ins to cover his shifts when he was running late or otherwise planned to miss a shift. (Dkt. 132 ¶¶ 5, 7). But Howard did not keep track of the hours he personally worked, nor did he contemporaneously track how many hours he relied on fill-ins. (*Id.* ¶ 11). Gary Davis, one such fill-in, testified that he worked four days per week between October 2017 and March 2022 covering shifts for Howard. (Dkt. 132 ¶ 6).

Kazupski facilitated payments to Howard and the rest of the security guards by submitting invoices to Dollar Tree, reflecting the hours each guard provided security services at each store. (Dkt. 78 ¶ 21). Dollar Tree then issued ACH payments to the guards based on the representations in the invoices. (*Id.*).

### B. Howard and Howard Realty Enterprises

All the while Howard was providing security services at Dollar Tree, he also owned and operated Howard Realty Enterprises ("HRE"), a company that provided security and security consulting services. (*Id.* ¶ 33; Dkt. 78-9 at 18:3–15). Between 2017 and 2022, Howard contracted with several individuals and entities besides Dollar Tree, including: Illinois Security Professionals, Off-Duty Services, Greater St. John Bible Church, AF Services, Inc., Resident Ready, Ltd., producer Tyler Perry, and actress Cassie Davis. (Dkt. 78 ¶ 31).

Howard, as HRE's sole proprietor, reported HRE's tentative net profits as his personal income when filing taxes with the Internal Revenue Service ("IRS"). (*Id.* ¶ 50). Importantly, Howard claimed revenue from Dollar Tree as business income. (*Id.*). As set forth in the table below, the revenue Howard received from Dollar Tree comprised a large portion of his annual net profits.

| Year | HRE Income Attributable to Dollar Tree | HRE Gross Income[1] | HRE Net Profit |
|---|---|---|---|
| 2019 | $102,630 | $124,594 | $96,757 |
| 2020 | $95,460 | $114,009 | $68,882 |
| 2021 | $109,867 | *** | $101,000 |
| 2022 | $27,180 | $212,275 | $169,541 |

*See generally* Dkt. 78-16 (Howard's 2019–2022 1099 Forms from Dollar Tree); Dkt. 78-19 (Howard testifying to the content and accuracy of his tax documents); Dkt. 78-23 (same).

### C. Procedural Background

On September 9, 2022, Howard initiated the present action, claiming Dollar Tree violated the FLSA and IMWL by failing to pay him overtime wages between 2019 and 2022. Dollar Tree countersued, bringing claims of fraud, breach of contract, and unjust enrichment based on Howard's improper billing practices and misrepresentation of his status as a law enforcement officer.

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015). In determining whether a genuine issue of fact exists, the Court must take the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233

---

[1] Howard's gross income for 2021 is not clearly identified in the record.

F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the Court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Anderson*, 477 U.S. at 248.

## DISCUSSION

### I. Dollar Tree's Motion for Summary Judgement

The principal dispute in Dollar Tree's motion is two-fold. The parties dispute whether Howard qualifies as an "employee" within the meaning of the FLSA and IMWL and, if so, whether Dollar Tree failed to satisfy its obligation to pay Howard a premium for overtime.

### A. There is a genuine dispute about whether Howard was an employee or an independent contractor.

Under the FLSA, an employee is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). To assist courts in distinguishing between employees and contractors, the Seventh Circuit has articulated six factors to be considered: (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; and (6) the extent to which the service rendered is an integral part of the alleged employer's business.[2] *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1535 (7th Cir. 1987). No one thing is dispositive. *Id*. Rather, the considerations are ultimately meant to

---

[2] The parties do not dispute that the standards for determining employee status under the Illinois Minimum Wage Law are practically identical to the six-factor test articulated in *Lauritzen*. *See Callahan v. City of Chicago*, 78 F. Supp. 3d 791, 821 (N.D. Ill. 2015) ("Because the IMWL parallels the FLSA so closely, courts have generally interpreted their provisions to be coextensive, and so have generally applied the same analysis to both."). So, the Court will conduct the analysis under the FLSA standard, but the outcome applies to the IMWL claim as well.

6

get at the "economic reality" of the working relationship, with a particular focus on whether the alleged employee is economically dependent on the employer. *Id*. at 1534. In other words, the Court assesses, under the totality of the circumstances, whether Howard was more like an employee or an independent contractor.

1. Control

The first consideration is the nature and degree of control that Dollar Tree exercised over Howard's work. *Lauritzen*, 835 F.2d at 1536. "Evidence that reflects the employer's dominance over the manner and method of how work is performed tends to show that the individual was an employee under the control of the employer." *Jaworski v. Master Hand Contractors, Inc.*, 2013 WL 1283534, at *3 (N.D. Ill. Mar. 27, 2013) (cleaned up). In *Bulaj*, for instance, this factor weighed in favor of employee status where a property management company had "full control" over a maintenance worker because it set his schedule, monitored the quality of his work, and disciplined him when the work did not meet certain standards. *Bulaj v. Wilmette Real Estate and Management Co., LLC*, 2010 WL 4237851, at *6 (N.D. Ill. Oct. 21, 2010). Courts have also found "control" where the employer created procedures or guidelines that workers were required to follow. *Solis v. Int'l Detective & Prot. Serv., Ltd.*, 819 F. Supp. 2d 740, 750 (N.D. Ill. 2011); *Harris v. Skokie Maid & Cleaning Serv., Ltd.*, 2013 WL 3506149, at *7 (N.D. Ill. July 11, 2013).

Here, Dollar Tree issued Post Orders detailing its expectations of security guards, which included monitoring the lobby, using one's presence to deter shoplifting, monitoring the parking lot, checking the store after closing time to ensure no one remained hidden within the store, and escorting employees to their vehicles after closing. Though Kazupski shared these directives with Howard, Howard believed the Post Order instructions were just "an example of what [he] should be doing," noting that the manner in which he performed his duties could change in response to

7

the events of the day. (Dkt. 78 ¶ 65). Howard exercised great autonomy in deciding when to arrive to work, who would cover his shifts in his absence, where to position himself within the store, how thoroughly to inspect the store for hidden intruders, and whether he escorted employees to their cars after closing. Ultimately, he worked largely unsupervised, relying on his "training" and "sense" in fulfilling his duties. (*Id.* ¶ 65). While Kazupski admits to conducting periodic inspections on the security guards, there is no evidence that Kazupski ever penalized Howard for his failure to fully comply with the Post Orders or for exercising the autonomy described above. Even drawing reasonable inferences in Howard's favor, the "control" factor does not favor a finding of employee status.

2. Opportunities for Profit or Loss

Workers are more likely to be independent contractors, not employees, if they retain the opportunity to increase their profits by exercising managerial skill and risk losing their investments with poor performance. *Lauritzen*, 835 F.2d at 1536. Howard argues that he did not have an opportunity to make a profit on his work at Dollar Tree because he was paid a flat rate per hour and when he paid Davis directly for covering his shifts, Howard would only withhold enough money to cover taxes. At the same time, Howard, by having others work his shifts at Dollar Tree, was available to provide security services for other companies, thus generating additional income. Still, the additional income Howard generated while also working at Dollar Tree pales in comparison to the revenue Howard generated from his work at Dollar Tree. Resolving this dispute in a light most favorable to Howard, a reasonable juror could conclude that this factor favors a finding of employee status.

8

3. Investment in Equipment

Turning to the third factor, "a worker who makes a large out-of-pocket investment in his job is more likely to be an independent contractor" than an employee. *Jaworski*, 2013 WL 1283534, at *4. "[N]egligible items or labor itself" do not count. *Lauritzen*, 835 F.2d at 1537. So, if the only thing that Howard contributed to his work was his labor, then that would point to employee status. In contrast, if Howard paid for most of his own tools, equipment, and materials, then he is more likely to be an independent contractor.

Howard provided his own equipment and materials, including: a baton, OC spray, handcuffs, a bullet proof vest, and a gun. (Dkt. 108 ¶ 68). While Howard emphasizes that Dollar Tree paid for the buildings he worked in and the chair he sat on during his shifts, he does not suggest, and a reasonable juror could not conclude, that Dollar Tree paid for its buildings as an investment in Howard's security services. Dollar Tree simply could not operate its brick-and-mortar business without investing in facilities. That Howard paid for nearly all of his tools, equipment, and materials supports a finding that he was an independent contractor.

4. Special Skills

In general, "certain highly specialized job skills support independent contractor classification." *Perez*, 55 F. Supp. 3d at 1077. Although certain skills, such as operating a firearm, were required to perform the job, on the whole the Howard's work did not demand a high degree of technical expertise or skill. And even though Howard undertook karate, kung fu, and weapons disarming training, he was not expected to use those skills. (Dkt. 108 ¶ 64). In fact, Dollar Tree's Post Orders evince its expectation that security guards "notify the police when needed," rather than making arrests on their own. (*Id*. ¶ 108). While on the job, Howard was primarily responsible for monitoring the parking lock, back of the store, and front sidewalk for unwanted activity such as

9

loitering, panhandling, and drug dealing. At the end of the night, Howard was tasked with checking the store to ensure no one remained hidden in the building and escorting employees to their vehicles. These tasks comprised the majority of Howard's work and they did not require any special skills. *See, e.g., Schultz v. Cap. Int'l Sec., Inc.*, 466 F.3d 298, 308 (4th Cir. 2006) (security guards with specialized training in personal protection were not simply the "average security guard" and providing security for a diplomat entailed certain challenges, but this factor was equally offset by the guards' responsibility for arranging wake up calls, moving furniture, and providing the newspaper); *Lauritzen*, 835 F.2d at 1537 (although "development of occupational skills" is needed to harvest pickles these skills are "no different from what any good employee in any line of work must do"; thus, this level of skill did not differentiate pickle harvesters from harvesters of other crops). Though Howard had to acquire a certain amount of general knowledge about operating in line with Dollar Tree's expectations, monitoring the stores involved normal, unspecialized security guard work.

5. Permanency

The more "permanent" and "exclusive" the working relationship, the more likely workers are to be employees. *Lauritzen*, 835 F.2d at 1537. There is nothing in the record before the Court that suggests the parties anticipated any end date to the working relationship. Indeed, Howard provided security services for Dollar Tree for fourteen years. This permanence, however, is counteracted by the lack of exclusivity. Howard's testimony and tax returns clearly establish that he provided security services to several other entities besides Dollar Tree between 2019 and 2022. Resolving all disputes in favor of Howard, a reasonable trier of fact could find that this factor supports employee status.

6. <u>Integral Part of Business</u>

"Individuals are more likely to be employees if they perform the primary work of the alleged employer." *Perez*, 55 F. Supp. 3d at 1078 (internal quotation marks omitted) (holding that this factor favored employee status because "the primary business of Supermaid is providing cleaning services" and "[m]aids who work for Supermaid perform that cleaning"); *see also Lauritzen*, 835 F.2d at 1537–38 (holding that pickle harvesters were an "integral part of the pickle business" because they were an essential link in the sale of pickles); *Int'l Detective & Protective Serv.*, 819 F. Supp. 2d at 753 (same, where security guards were an integral part of a security services company's business). This factor disfavors finding employee status because Dollar Tree's business centers on selling low-cost goods, not security services. When Howard would arrive late, leave early, or when shifts were not covered, Dollar Tree's business could still operate "fully and effectively." (Dkt. 78-6 at 41:5–19).

7. <u>Other Considerations</u>

In sum, three of the six *Lauritzen* factors favor Howard on summary judgment, and three favor Dollar Tree. Beyond these six factors, Dollar Tree points to a few additional facts that bear on the "economic reality" of the relationship and whether Howard was economically dependent on Dollar Tree, or whether he was merely "in business for [himself]" as an independent contractor. *Lauritzen*, 835 F.2d at 1537. Dollar Tree argues that the true essence of the parties' relationship was that of two companies, explaining that it paid Howard via IRS Form 1099 and assigned him a vendor identification number.

Tax forms and tax returns are indispensable when determining whether a worker is an employee or independent contractor. *Trasys Est. of Suskovich v. Anthem Health Plans of Virginia, Inc.*, 553 F.3d 559, 568 (7th Cir. 2009) (when analyzing the method of payment factor under the

Restatement test "tax forms and tax returns are essential when deciding which status this factor favors"). When considering a party's tax treatment, courts consider whether a party filed a W–2 Statement or Form 1099. *Mazzei v. Rock–N–Around Trucking Inc.*, 246 F.3d 956, 964–65 (7th Cir. 2001); *EEOC v. North Knox Sch. Corp.*, 154 F.3d 744, 750 (7th Cir. 1998). Issuing 1099 forms, which are used for non-employee compensation, is a strong indication of independent contractor status. *See Suskovich*, 553 F.3d at 568 (citing *North Knox Sch. Corp.*, 154 F.3d at 750)).

Howard's worker status could be properly categorized as that of an independent contractor because Dollar Tree used Form 1099 to report his compensation to the Internal Revenue Service. Each form clearly indicates that the money Howard received was for nonemployee compensation and identifies Dollar Tree as a payer, rather than an employer. (Dkt. 78-16 at 1–6). Dollar Tree did not withhold any money from Howard's compensation for income, payroll, or unemployment taxes, as it did for its employees. Moreover, Howard's tax returns for HRE reported revenue from Dollar Tree and other entities as business income, and Howard's Schedule C form reflects HRE's profits as his personal income.

While these facts are persuasive, the record, on the whole, does not establish by clear and convincing evidence that Howard was an independent contractor. Because reasonable minds could disagree, and given the conflicting evidence in the record, the Court cannot conclude as a matter of law that Howard was an independent contractor.

### B. There is a genuine dispute about whether Dollar Tree failed to pay Howard overtime.

As explored in *infra* § II.B, neither Howard nor Kazupski maintained accurate and complete records of how many hours Howard personally provided security services, how many hours Howard had someone else work on his behalf, and how often Howard missed work

altogether. Thus, the Court does not have evidence upon which it can determine whether Howard worked overtime. Accordingly, Dollar Tree's motion for summary judgment is denied.

    **II.    Howard's Motion for Summary Judgement**

        **A.  Affirmative Defenses**

Howard contends summary judgment should be granted with respect to Dollar Tree's affirmative defenses 1, 2, 5, 6, 7, 10, 11, 12, 13, 14, 15, and 18 because they "are not real affirmative defenses" but instead they are "mere assertions of law or too conclusory." (Dkt. 81-2 at 3). Dollar Tree, in response, argues that Howard's motion for summary judgment should be denied because it is really a Federal Rule of Civil Procedure 12(f) motion to strike which is untimely and because it properly pled its affirmative defenses in any event. The Court agrees.

With regard to Howard's contention that Dollar Tree's affirmative defenses are nothing more than legally insufficient conclusory allegations, the Court finds that Dollar Tree stated, "in short and plain terms its defenses to each claim asserted against it." *See* Fed. R. Civ. P. 8(b). Moreover, if Howard truly believed these defenses were insufficient on their face, he should have filed a motion to strike these defenses within twenty-one days after served with the pleading. *See* Fed. R. Civ. P. 12(f). If the Court decided to strike Dollar Tree's defenses now on this basis, the Court would grant Dollar Tree leave to amend its defenses considering how late in the game Howard decided to raise this argument. *See* Fed. R. Civ. P. 15(a). Going through that process would be an exercise in futility and a waste of resources. Dollar Tree has sufficiently raised its affirmative defenses and will carry the burden of proving them at trial.

Further, because Howard moved under Federal Rule of Civil Procedure 56, he was required to demonstrate that no genuine issue of material fact exists to support Dollar Tree's affirmative defenses. *See* Fed. R. Civ. P. 56(a), (c). But Howard's motion evinces his mistaken belief that the

13

burden of proof at this stage lies with Dollar Tree. Howard complains at length about alleged pleading deficiencies, when it is his motion that is deficient. Howard offers not one iota of evidence upon which the Court could conclude that Dollar Tree is not entitled to the affirmative defenses at issue. Thus, because Howard's argument is undeveloped and lacks evidentiary support, his motion for summary judgment as to Dollar Tree's affirmative defenses is denied.

### B. Counterclaims

The Court now turns to Howard's arguments on the merits of Dollar Tree's counterclaims for fraud, breach of contract, and unjust enrichment. The Court considers each in turn.

#### 1. Common Law Fraud

The elements for fraud under Illinois common law are: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induces the plaintiff to act [scienter]; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (citing *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 675 N.E.2d 584, 591 (1996)). Dollar Tree's claim is two-fold. First, Dollar Tree contends that Howard intentionally misrepresented the number of hours he personally worked, intending to induce Dollar Tree to pay more than it owed, and he misrepresented his status as a law enforcement officer, intending to keep Dollar Tree from terminating his contract.

As to his improper billing practices, Dollar Tree points to evidence establishing that Kazupski submitted invoices on Howard's behalf, which sometimes included hours that other people, including Davis, worked for Howard. (Dkt. 81-4 at 92:2–9:24; Dkt. 78 ¶ 36). There is also evidence that Howard reviewed those invoices for accuracy; that Howard knew he did not work

14

certain hours reflected on his invoices; and that Howard informed Dollar Tree whenever he was underpaid. (*Id*.). Taken together, these facts could support a finding that Howard falsely told Dollar Tree that he worked and was personally owed compensation for all hours reflected on his invoices, even though Howard knew this was untrue.

As to Howard's representations about his status as a law enforcement officer, Dollar Tree provides evidence that on multiple occasions Howard told others that he was a police officer; that he held himself out as a police officer by wearing a uniform that included "a star and a gun." (Dkt. 78 ¶ 12). Indeed, Howard's own testimony and factual attestations demonstrate that he identifies as "auxiliary police" which, to him, means that he is law enforcement personnel. Howard, however, has never sworn an oath of office or worked for a governmental law enforcement agency. On these facts, a reasonable juror could conclude that Howard falsely held himself out as law enforcement officer, despite lacking the appropriate credentials. Therefore, Howard cannot successfully argue that there is no genuine dispute of material fact, thus entitling him to summary judgment on the fraud claim.

### C. Breach of Contract

Next, Howard argues he is entitled to summary judgment on Dollar Tree's claim for breach of contract. To successfully bring a breach of contract claim under Illinois law, a plaintiff must establish: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach by the defendant; and (4) damages caused by that breach. *Babbitt Municipalities, Inc. v. Health Care Service Corp.*, 408 Ill.Dec. 93 (Ill. 2016). As with the fraud claim, Dollar Tree argues that it had an agreement to compensate Howard in exchange for providing security services, that it did indeed compensate Howard for the hours reflected on his invoices, and that it was harmed by overpaying for services Howard did not provide. As stated

*supra* § II.B., Dollar Tree points to evidence upon which a reasonable jury could conclude that Howard wrongly retained payment for hours he did not provide security services, thus breaching the parties' agreement.

### D. Unjust Enrichment

To successfully bring a claim of unjust enrichment under Illinois law, a plaintiff must establish that "the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Hernandez v. Illinois Inst. of Tech.*, 63 F.4th 661, 671 (7th Cir. 2023) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (Ill. 1989)). But a plaintiff may not recover under an unjust enrichment theory if there is an enforceable contract that governs the relevant subject matter. *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 886 (7th Cir. 2022) (citing *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604 (Ill. App. Ct. 2005)). Here, the parties clearly had an agreement whereby Dollar Tree would compensate Howard for providing security services. The record does not, however, clearly establish the boundaries of that agreement, including whether the use of fill-ins was necessarily disallowed. Indeed, on multiple occasions, Kazupski asked Howard to find fill-ins for other guards who could not cover their own shifts. Thus, a jury must decide whether Howard breached the contract by using fill-ins and accepting payment on their behalf.

**<u>CONCLUSION</u>**

For the foregoing reasons, Dollar Tree's motion for summary judgment [76] and Howard's motion for summary judgment [81] are denied.

Date: September 28, 2024

_____
Virginia M. Kendall
United States District Judge