THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARYL HOWARD, | ) |
| *Plaintiff/Counter-Defendant*, | ) No. 22 C 4874 |
| v. | ) Chief Judge Virginia M. Kendall |
| DOLLAR TREE STORES, INC., | ) |
| *Defendant/Counter-Plaintiff*. | ) |

**OPINION AND ORDER**

Defendant, Dollar Tree Stores, Inc. ("Dollar Tree"), asks the Court to reconsider its September 28, 2024 Order [133] denying Dollar Tree's Motion for Summary Judgment [76]. The Court's Order found that judgment as a matter of law was inappropriate on the question of whether the Plaintiff, Daryl Howard, was a Dollar Tree employee or merely an independent contractor. (Dkt. 133 at 12). The Court further concluded that there was insufficient "evidence upon which it can determine whether Howard worked overtime." (*Id.* at 13). Proceeding under Federal Rule of Civil Procedure 59(e), Dollar Tree asks this Court to reexamine both prior holdings. (Dkt. 135). Having conducted a thorough review of the parties' briefing, the relevant law, and the record in this case, the Court denies Dollar Tree's Motion for Reconsideration.

**BACKGROUND**

The Court assumes the parties' familiarity with the facts as set forth in the Summary Judgment Opinion and does not recount them in detail here. (*See* Dkt. 133 at 2–6). Indeed, Dollar Tree does not suggest that the Court made any factual errors, but instead points to areas of the Summary Judgment Opinion that it asserts contain errors of law. (Dkt. 140 at 2). Suffice to say, this case turns on two specific determinations. First, whether Howard, a longtime security guard

1

at two Dollar Tree Stores on the south side of Chicago was an employee or an independent contractor. Howard, throughout this case has argued that he is an employee, a necessary finding for his claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, to survive. (Dkt. 133 at 6). Second, whether Howard in fact ever worked any overtime, another necessary finding for his FLSA and IMWL claims to survive. (*Id*. at 12–13).

## STANDARD OF REVIEW

Dollar Tree moves for reconsideration under Federal Rule of Civil Procedure 59(e). That rule, however, only applies to motions that seek to "alter or amend a *judgment*." Fed. R. Civ. P. 59(e); *see Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012) ("[A] traditional Rule 59(e) motion . . . can only follow a 'judgment.' "). The "denial of summary judgment is an interlocutory ruling," not a final order or judgment, and not subject to a Rule 59(e) motion. *Haze v. Kubicek*, 880 F.3d 946, 950 (7th Cir. 2018); *see also Bedford v. DeWitt*, 695 F. Supp. 3d 998, 1001 (N.D. Ill. 2023) (Kendall, C.J.). Still, denials of summary judgment are subject to reconsideration under Federal Rule of Civil Procedure 54(b) and "governed by largely the same standards as motions under Rule 59(e)." *Bedford*, 695 F. Supp. 3d at 1001. That is, reconsideration is only warranted in "rare circumstances, with the moving party bearing a heavy burden." *Id*. The party seeking reconsideration must "clearly establish[]" that the Court either committed a manifest error of law or fact or that some new evidence necessitates a reversal of the Court's prior order. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013). Accordingly, the Court treats Dollar Tree's Motion for Reconsideration as one made pursuant to Rule 54(b). *See Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998) ("[C]aptions do not control.").

2

## **DISCUSSION**

Dollar Tree presents three arguments in its Motion for Reconsideration. Two of these raise questions about the Court's treatment of the Seventh Circuit's six-factor test outlined in *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529 (7th Cir. 1987), which guides determinations of whether an individual is an employee or contractor under the FLSA. Dollar Tree first claims that the Court improperly analyzed the second *Lauritzen* factor, which asks whether a plaintiff had an opportunity to increase their profits by exercising managerial skill. (Dkt. 136 at 9); *Lauritzen*, 835 F.2d at 1536. Second, Dollar Tree alleges the Court's summary judgment order "contradicts precedent" in finding that the regular use of subcontracting alone does not establish independent contractor status as a matter of law. (*See* Dkt. 136 at 12). Finally, Dollar Tree argues that the Court improperly shifted the burden of proving overtime hours worked onto Dollar Tree and "implicitly concluded that Howard never could have worked *any* overtime," foreclosing relief under the FLSA and IMWL even assuming Howard is an employee. (Dkt. 136 at 1). Because none of these arguments demonstrate "manifest errors of law or fact," reconsideration is unwarranted. *Cincinnati Life*, 722 F.3d at 954.

Before addressing Dollar Tree's arguments, the Court must clarify a fundamental misunderstanding that appears in Dollar Tree's memoranda. Dollar Tree mistakenly suggests that the Court's Summary Judgment Opinion struck *all* of Howard's statements of fact. (Dkt. 136 at 6; Dkt. 140 at 3–5). Instead, the Court only struck statements of fact that "lack[ed] direct citation to easily identifiable support in the record," a determination that applied with equal force to both Howard *and* Dollar Tree's submissions. (Dkt. 133 at 2). Howard did provide statements of fact, supported by record evidence, that were not stricken and that the Court considered in both its Summary Judgment Opinion and the resolution of the instant Motion for Reconsideration.

3

I.  **Reexamination of the Employee–Independent Contractor Question**

Dollar Tree asks the Court to revisit its conclusion that judgment as a matter of law is inappropriate on the question of whether Howard is an employee or independent contractor. Dollar Tree's two arguments are inextricably linked to one fact: Howard used fill-ins, namely Gary Davis, to cover a disputed portion of his shifts. (*See* Dkt. 136 at 9, 11). First, Dollar Tree claims the Court committed a manifest error of law because instead of analyzing Howard's *opportunity* for profit under the second *Lauritzen* factor, the Court looked to whether Howard was indeed profiting through his position with Dollar Tree. (Dkt. 136 at 9). Second, Dollar Tree claims this Court "contradict[ed] precedent" in finding that the use of subcontracting does not automatically establish independent contractor status as a matter of law. (*Id.* at 12). Neither argument is persuasive, and both fall well short of demonstrating any manifest error of law.

A.  **Opportunities for Profit**

The second *Lauritzen* factor asks whether an individual retains the opportunity to increase their profits by exercising managerial skill and risk losing their investments with poor performance. *Lauritzen*, 835 F.2d at 1536. If yes, the individual is more likely to be an independent contractor. Dollar Tree proclaims that whether Howard *in fact* profited is immaterial to the second factor, and all that matters is that he was able to subcontract his work, decide how often to do so, and set the contracting price. (Dkt. 136 at 9). While this is a favorable fact for Dollar Tree on the second prong, it does not end the inquiry.

Dollar Tree's position that "opportunity" is all that matters is at odds with the broader analysis in which the *Lauritzen* factors fit. Each *Lauritzen* factors is meant only to aid the courts in analyzing the overall "economic reality of the working relationship by examining the totality of the circumstances." *Simpkins v. DuPage Housing Auth.*, 893 F.3d 962, 965 (7th Cir. 2018). Even

in situations where an employee has the contractual ability or opportunity to subcontract with a third party, that ability alone does not weigh against independent contractor status if, as a practical matter, the individual cannot exercise that right. *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 670 (7th Cir. 2022). Instead, courts are to consider the practical, economic realities of the parties' relationship. For example, in *Brant*, the court found that a long-haul trucker who had a "theoretical right" to subcontract with other carriers still did not have an opportunity for profit or loss because, as a practical matter "he had no realistic option other than to take the shipments" that his alleged employer offered him. *Id.*

Here, the evidence demonstrates that Howard did in fact use at least one subcontractor, Davis. (Dkt. 133 at 4). In this respect, this case is unlike *Brant* where the ability to subcontract was entirely hypothetical. However, the singular fact that Howard could and did use Davis as a fill-in does not control. This is largely driven by the conflicting evidence in the record about how often Davis was used as a fill-in for Howard, how much of Howard's reported income is tied to work others performed on his behalf, and how much his ability to subcontract freed Howard to work for other companies. There is also a significant factual dispute concerning how much, if any, profit Howard netted from his use of Davis given he claims that he "would only withhold enough money to cover taxes." (Dkt. 133 at 8). The remaining considerations outlined in the Court's Summary Judgment Opinion remain relevant to the inquiry, including that Howard was paid a flat hourly rate and the amount of Davis's income in the relevant years was dominated by his work at Dollar Tree. (Dkt. 133 at 8).

In all, there are facts that cut both way on the *Lauritzen* second factor and, critically, there are genuine disputes of material fact pertaining to the scope of Howard's use of fill-ins that "get[] to the heart of the economic relationship" between Howard and Dollar Tree. *Brant*, 43 F.4th 656.

5

If all are resolved in Howard's favor, as they must be at this stage, a reasonable juror could find that this factor counsels in favor of a finding of employee status. Dollar Tree has thus not demonstrated any manifest errors of law in the Court's application of the *Lauritzen* second factor.

### B. Use of Subcontractors

Next, Dollar Tree suggests the Court "contradicts precedent" and "creates new law" by failing to "take into account the dispositive nature of Howard's regular subcontracting" to third parties. (Dkt. 136. at 11–13). This argument is misguided on several fronts. Contrary to Dollar Tree's suggestion that courts in this circuit regularly find subcontracting "dispositive of the independent contractor analysis," (Dkt. 136 at 11), the use of subcontractors, fill-ins, or third parties is merely a fact to consider in the totality of the circumstances. *See, e.g.*, *Kibbons v. Double Jack Props., LLC*, 2020 WL 1322845, at *8 (N.D. Ill. Mar. 20, 2020) (finding that even when an alleged employee hires subcontractors, it is "still . . . necessary to place that event within the context" of the broader working arrangement); *see also Lauritzen*, 835 F.2d at 1534 ("[N]o criterion is by itself, or by its absence, dispositive or controlling."). Indeed, Dollar Tree's own parentheticals accompanying citations to *Mendiola v. Howley*, 2021 WL 3033613, at *5 (N.D. Ill. July 19, 2021) and *Perez v. SuperMaid, LLC*, 55 F. Supp. 3d 1065, 1075–76 (N.D. Ill. 2014) illustrate this point as both indicate the ability to subcontract was merely "in part" relevant to a determination of employee or independent contractor status. (*See* Dkt. 136 at11).

Dollar Tree heavily relies on one Central District of Illinois decision to further its argument. The court in that case observed that it was "unaware of any instances where an employee can contract with a third party to perform the actual work of the employer." *Derolf v. Risinger Bros. Transfer, Inc.*, 259 F. Supp. 3d 876, 880 (C.D. Ill. 2017). As a preliminary matter, the *Derolf* opinion is not binding on this Court. Second, the Seventh Circuit in *Brant*, overruled a district

6

court that relied on the exact passage of *Derolf* Dollar Tree now cites. *See Brant v. Schneider Nat'l, Inc.*, 2021 WL 179597, at *4 (E.D. Wis. Jan. 19, 2021), *rev'd and remanded*, 43 F.4th 656 (7th Cir. 2022). In its reversal, as discussed *supra* Section I.A, the *Brant* court observed that the use of hired helpers "weighs against employee status," but must be examined in the broader context of the parties' working relationship. *Brant*, 43 F.4th 656.

Dollar Tree is correct that Howard's use of third-party fill-ins to cover his shifts cuts against a finding of employee status. But it is not the panacea Dollar Tree hopes it is. Instead, Howard's use of fill-ins is merely one fact of many that colors the overall economic reality. *Lauritzen*, 835 F.2d at 1534. As outlined, there are myriad disputed issues of fact surrounding the extent of Howard's use of fill-ins. Indeed, the only undisputed evidence on this point is that Davis regularly worked at Dollar Tree on Howard's behalf during an eleven-week period in early 2022.[1] (*See* Ex. 2, Dkt 113-2). Resolving all factual disputes about Howard's use of subcontracting in his favor, the Court finds that this issue does not fundamentally alter the summary judgment determination. The Court has not identified any manifest errors of law in its Summary Judgment Opinion and Dollar Tree has thus failed to meet its "heavy burden" to justify reconsideration on the question of whether Howard is an employee as a matter of law. *Bedford*, 695 F. Supp. 3d at 1001.

## II.     Overtime Hours Actually Worked

Even assuming Howard was a Dollar Tree employee, Dollar Tree argues that Howard failed to carry his burden of proof that he "personally performed overtime work for which DTS did not properly compensate him" and that the Court improperly shifted the burden onto Dollar Tree to show prove that Howard did not work overtime. (Dkt. 136 at 4). Individuals seeking relief

---

[1] The Court's reference to Gary Davis's deposition in its Summary Judgment Opinion that indicates Davis testified to working at Dollar Tree on Howard's behalf in 2017, 2018, 2019, 2020, and 2021 as well, (Dkt. 133 at 4), was not a finding of undisputed fact but merely a reference to evidence in the record that is genuinely contested, including by Davis's sworn declaration.

under the FLSA for unpaid overtime compensation have the burden of proving that they did in fact work overtime hours for which they were not adequately compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946), *superseded on other grounds by* 29 U.S.C. §§ 251–62. This is not a difficult burden to meet when the employer has kept adequate records of an employee's hours worked; but that is not always the reality. *Id.* at 687. When the employer's records are inadequate, an employee can still carry his burden by demonstrating "as a matter of just and reasonable inference" that he did in fact work overtime for which he was inadequately compensated. *Id.* at 687–88. "Relying on the employee's recollection is permissible given the unlikelihood that an employee would keep his own records of his work hours." *Melton v. Tippecanoe Cnty.*, 838 F.3d 814, 819 (7th Cir. 2016). If the employee meets his burden, the employer can bring forward evidence to "negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687–88.

As the Court found in its Summary Judgment Opinion, there is not sufficient evidence in the record to say with certainty how many hours Howard worked during the relevant period, much less how many hours above forty he may have worked in any given workweek. (Dkt. 133 at 4). Dollar Tree, for its part, points to evidence that it says shows Howard *always* worked less than forty-hour workweeks. Principally, Dollar Tree relies on two exchanges in Gary Davis's deposition testimony, where he says that he worked on Howard's behalf between 2017 and 2022, at times for as many as four days per week. (*See* Ex. ZZ, Dkt. 132-3 at 13–14, 19 (Davis Deposition)). This patchwork picture does not provide a complete, accurate, and undisputed accounting of Howard's work such that summary judgment is appropriate. Without accurate evidence of Howard's actual hours worked, Howard can satisfy his burden by demonstrating that

8

he did in fact work overtime, and the "extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687.

Dollar Tree suggests Howard has not come forward with sufficient evidence to create a just and reasonable inference of the amount and extent of his overtime. (Dkt. 136 at 6). Here, Dollar Tree mistakenly believed this Court stuck all of Howard's statements of fact, which is not the case. Howard did provide statements of fact, supported by record evidence, that create a just and reasonable inference that he worked some overtime during his years of service as a security guard at Dollar Tree. For example, Howard points to Gary Davis's declaration, which directly contradicts the deposition testimony on which Dollar Tree relies, suggesting that he only began filling in for Howard beginning in January 2022—outside the period for which Howard seeks compensation for unpaid overtime. (Ex. 2, Dkt. 113-2 at 1 (Davis Declaration)). Howard also points to Kazupski's deposition testimony, in which he plainly states that between 2017 and 2022, Howard was working at Dollar Tree "a lot, 70 hours per week." (Ex. 9, Dkt. 114-6 at 96:14–18 (Kazupski Deposition)). Finally, Howard provides a spreadsheet based on his recollection, memory, and review of relevant records that he alleges provides a baseline calculation of his overtime hours worked for the period in question. (*See* Ex. A, Dkt. 114-12 at 36–38 (Howard Overtime Spreadsheet)).

There is evidence on this record to support a reasonable inference that Howard worked overtime for which he was not compensated. While summary judgment is often appropriate for an employer in cases where an employee can come forward with nothing more than bare conclusions, guesswork, or "unsupported ipse dixit [that] is flatly refuted by the hard evidence," that is not this case. *Turner v. The Saloon, Ltd.*, 595 F. 3d 679, 690 (7th Cir. 2010). Hard evidence of Howard's hours is hard to come by, in part because Dollar Tree never tracked what security guards were

9

working which shifts and for how long. Howard's spreadsheets, though far from perfect or conclusive, are at least corroborated by Kazupski's deposition testimony. Davis's conflicting testimony does little more than emphasize the factual disputes surrounding how much Howard himself worked. The Court stands by its conclusion that there is insufficient evidence to conclude, as a matter of law, that Howard did work the hours contained in the spreadsheet. But the genuine disputes of material fact pertaining to Howard's work hours render summary judgment on the issue inappropriate, as the Court previously held. *See, e.g.*, *Dominguez v. Quigley's Irish Pub, Inc.*, 790 F. Supp. 2d 803, 817–18 (N.D. Ill. 2011) (recognizing that summary judgment is inappropriate on an FLSA claim when there is competing evidence of whether and how much overtime an employee worked).

The Court recognizes that its Opinion on this prong of Howard's FLSA claim summarily concluded that summary judgment should be denied given a lack of evidence. Now, having reviewed the evidence and the parties' briefing, and after a more fulsome discussion of the relevant law, the Court reaffirms its conclusion and denies Dollar Tree's Motion to Reconsider on this issue.

## CONCLUSION

For the reasons set forth above, Dollar Tree's Motion for Reconsideration [135] is denied.

_____
Virginia M. Kendall
United States District Judge

Date: February 6, 2025